# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA-EASTERN DIVISION

| | |
|---|---|
| SYLVIA CEBALLOS, | ) No. CV 13-1583-AS |
| Plaintiff, | ) |
| v. | ) **MEMORANDUM OPINION** |
| CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration, | ) |
| Defendant. | ) |

## PROCEEDINGS

On September 11, 2013, Plaintiff filed a Complaint seeking review of the denial of her application for Social Security benefits. (Docket Entry No. 1.)  The parties consented to proceed before a United States Magistrate Judge.  (Docket Entry Nos. 8, 10.)  On January 10, 2014, Defendant filed an Answer to the Complaint along with the Administrative Record ("A.R.").  (Docket Entry Nos. 13, 14.) The parties filed a Joint Stipulation ("Joint Stip.") on July 2, 2014, setting forth their respective positions on Plaintiff's claim.

(Docket Entry No. 20.) The Court has taken the matter under submission without oral argument. See C.D. Cal. L.R. 7-15.

**BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION**

On February 1, 2012, Plaintiff filed an application for Supplemental Social Security Income ("SSI"). (A.R. 142—47.) Plaintiff alleged an inability to work since February 11, 2010 due to severe depression, paranoia, suicidal tendencies, and homicidal tendencies. (A.R. 166.) On April 2, 2013, the Administrative Law Judge ("ALJ"), Mason D. Harrell, Jr., examined the record and heard testimony from Plaintiff and vocational expert Mary Jesko. (A.R. 23—42.) On June 24, 2013, the ALJ issued a decision denying Plaintiff's application. (A.R. 6-22.) The ALJ determined that Plaintiff had the following severe impairments: depression and obesity. (A.R. 11.) However, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act. (See A.R. 13—18.)

Plaintiff requested that the Appeals Council review the ALJ's decision. (A.R. 14—15.) The request was denied on July 19, 2013. (A.R. 1—4.) The ALJ's decision then became the final decision of the Commissioner, allowing this Court to review the decision. See 42 U.S.C. §§ 405(g); 1383(c).

/ /
/ /
/ /
/ /
/ /

2

**PLAINTIFF'S CONTENTIONS**

Plaintiff alleges that the ALJ erred in: (1) discounting the credibility of Plaintiff's testimony and subjective complaints in support of her disability claim, and (2) finding an inconsistency between the Dictionary of Occupational Titles ("DOT") and the ALJ's holding that the Plaintiff can perform the jobs of small products assembler and garment folder. (Joint Stip. 3.)

**DISCUSSION**

**A. The ALJ Did Not Err In Evaluating Plaintiff's Credibility**

An ALJ's assessment of a claimant's credibility is entitled to "great weight." See Anderson v. Sullivan, 914 F.2d 1121, 1124 (9th Cir. 1990); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1985). "[T]he ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012). In order to determine whether a claimant's testimony is credible, the ALJ engages in a two-step analysis. Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014).

First, the claimant "must produce objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (quoting 42 U.S.C.

§ 423(d)(5)(A)(1988)).  In producing evidence of the underlying impairment, "the claimant need not produce objective medical evidence of the pain or fatigue itself, or the severity thereof." Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996).  Instead, the claimant "need only show that [the impairment] could reasonably have caused some degree of the symptom." Id.

Second, once the claimant has produced the requisite objective medical evidence, the "ALJ may reject the claimant's testimony regarding the severity of her symptoms." Smolen, 80 F.3d at 1284. Absent affirmative evidence of malingering, however, the ALJ may only reject a plaintiff's testimony "by offering specific, clear and convincing reasons for doing so." Id.  In assessing a claimant's alleged symptoms, an ALJ may consider: "(1) ordinary techniques of credibility evaluation, such as claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears to be less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." Id.  An ALJ may also consider "the claimant's work record and observations of treating and examining physicians and other third parties." Id.

Here, the ALJ examined the Administrative Record and heard testimony from Plaintiff.  Based on the record, the ALJ determined that Plaintiff had produced objective medical evidence of underlying impairments that "could reasonably be expected to cause some of the alleged symptoms."  (A.R. 14.)  However, the ALJ found that

4

Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (A.R. 14.)

The Court agrees with Plaintiff that some of the ALJ's reasons for discounting her testimony were not clear and convincing. For example, the ALJ found that Plaintiff's description of her symptoms were "vague and general, lacking the specificity, which might otherwise make it more convincing." (A.R. 14.) However, the ALJ failed to specifically identify what testimony he found not credible. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) ("the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.") (quoting Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995)). Moreover, contrary to the ALJ's finding, Plaintiff testified that she "paces a lot, get[s] agitated, and anxious," that she sees hallucinations and hears voices talking to her, and that she thinks people are conspiring against her. (A.R. 31–32.) Plaintiff stated that when she gets depressed, she is sad, paranoid, anxious, agitated, and borderline aggressive. (A.R. 33.) Plaintiff also stated that she tried to kill her sister and another male relative. (A.R. 35–36.) Based on the above mentioned testimony, the Court finds that Plaintiff has described her symptoms with sufficient particularity. Thus, this is not a clear and convincing reason to discredit Plaintiff's testimony. See Reddick, 157 F.3d at 722.

The ALJ also discredited Plaintiff's credibility based on Plaintiff's description of her daily activities. Orn v. Astrue, 495

F.3d 625, 639 (9th Cir. 2007) ("[D]aily activities may be grounds for an adverse credibility finding if a claimant is able to spend a substantial part of his day engaged in pursuits involving performance of physical functions that are transferable to a work setting.")  The ALJ noted that Plaintiff indicated she could take care of hygiene and perform self-care, cook, do chores, and follow safety precautions. (A.R. 14.)  The ALJ found that some of the physical and mental abilities and social interactions required in order to perform these activities are the same as those necessary for obtaining and maintaining employment. (Id.)  However, the Ninth Circuit has reiterated that "[g]enerally, an ALJ should not consider activities like taking care of oneself, household tasks, hobbies, school attendance, club activities, or social programs to be substantial gainful activities." Lewis v. Apfel, 236 F.3d 503, 516 (9th Cir. 2001). "One does not need to be 'utterly incapacitated' in order to be disabled." Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) (citing Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)). Here, Plaintiff's reported daily activities are not indicative of her ability to work and do not detract from her subjective complaints. Thus, the ALJ erred in discrediting Plaintiff because she was engaged in some limited activities of daily living.

Nevertheless, an error by the ALJ with respect to one or more factors in a credibility determination may be harmless if the ALJ's "remaining reasoning and ultimate credibility determination were adequately supported by substantial evidence in the record." See Carmickle v. Commissioner, 533 F.3d 1155, 1162-63 (9th Cir. 2008); Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006)

(quoting Stout v. Comm'r, 454 F.3d 1050, 1055 (9th Cir. 2006)) (the Court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'"). Here, the ALJ provided acceptable reasons for discrediting Plaintiff's testimony, each of which is fully supported by the record.

First, the ALJ noted that the findings of Plaintiff's doctors regarding her mental impairments were inconsistent with her claims of continuing debilitating symptoms.[1] Although Plaintiff was hospitalized in February 2010 and September 2011 for attempting suicide, the treatment notes submitted by Christopher E. Berger, M.D. indicate that her symptoms of depression were subsequently controlled with medication. (A.R. 273—75.) Dr. Berger found that Plaintiff was "stable and improving" and Plaintiff reported feeling better after treatment. Moreover, her psychotic episodes were resolved, and she showed no signs of paranoia. (A.R. 273—75.) Dr. Berger even suggested to Plaintiff that she volunteer or do work as a caregiver. (A.R. 275.) On April 24, 2012, a physician at Norton Clinic confirmed these findings, concluding that Plaintiff's "depression

---

[1] The ALJ may consider objective medical evidence in determining a claimant's credibility regarding subjective symptom testimony, as long as the ALJ does not reject such testimony solely because it is unsubstantiated by the objective medical evidence. 20 C.F.R. §§ 404.1529(c), 416.929(c); Rollins v. Massanari, 261 F.3d 853, 856, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects.").

[was] under much better control with Dr. Burger [sic] & her new meds." (A.R. 296.) Furthermore, on October 12, 2012, Khushro Unwalla, M.D., found that Plaintiff was "adhering [to her medications] and seem[ed] to be doing well with the current treatment." (A.R. 306.)[2]

The ALJ also concluded that Plaintiff stopped working for reasons other than disability, noting that Plaintiff quit her job as a nurse in order to take care of her sick mother. (A.R. 14.) In assessing credibility, an ALJ may consider the fact that a claimant stopped working for reasons other than disability. See Bruton v. Massanari, 268 F.3d 824, 828 (9th Cir. 2001). Plaintiff argues that despite her decision to stop working in 2001, she developed a severe medical impairment years later when she was hospitalized in 2010 and 2011. (Joint Stip. 6.) However, Plaintiff cannot demonstrate that

---

[2] Plaintiff testified at the hearing that after her September 2011 hospitalization, she also sought treatment with a psychiatrist until July 2012 and then a therapist on a weekly basis. (A.R. 25—26; 30—31.) Plaintiff argues that the ALJ should have attempted to obtain the therapist and psychiatrist records which were not present in the medical record. Plaintiff is correct that the ALJ has a duty to fully and fairly develop the record and assure that the claimant's interests are considered. See Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996). However, the therapist and psychiatrist were never mentioned in the disability reports Plaintiff completed, (see A.R. 165—84; 188—203), and Plaintiff has neither suggested nor demonstrated that the missing records contain evidence that Plaintiff's disability cannot be controlled with medication and treatment. Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1008 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for [disability] benefits."). Thus, the Court is not persuaded that the ALJ's failure to obtain these records requires reversal and remand.

these hospitalizations resulted from a severe medical impairment which prevents Plaintiff from working. As Defendant notes, Plaintiff's hospital records indicate that her chief complaint was "stress of being unemployed." (A.R. 231.) Additionally, as the Court noted, Plaintiff's mental status improved dramatically following the hospitalizations. (A.R. 273, 296, 304, 306.) Accordingly, substantial evidence supports the ALJ's credibility determination.

**B.  The ALJ's Holding That Plaintiff Can Perform The Jobs Such as Small Products Assembler and Garment Folder Is Not Inconsistent With The DOT**

The ALJ determined, based on the testimony of vocational expert ("VE") Mary Jesko, that Plaintiff is capable of performing the jobs of small parts assembler and garment folder, both of which are available in significant numbers in the national economy. (A.R. 17–18.) Plaintiff contends that there is a DOT inconsistency in the ALJ's holding that the Plaintiff can perform these jobs, because the ALJ determined in his RFC that Plaintiff's impairments will cause her to miss work 1 to 2 times a month. (Joint Stip. 25.)

An ALJ may not rely on a VE's testimony regarding the requirements of a particular job without first inquiring whether the testimony conflicts with the DOT, and if so, why it conflicts. Massachi v. Astrue, 486 F.3d 1149, 1152–53 (9th Cir. 2007). Here, the ALJ asked the VE whether missing work 1-2 days a month would change his testimony that Plaintiff could perform the jobs of small

products assembler and garment folder. (A.R. 40.) The VE responded that 1-2 days "would be an acceptable degree of absence from the workplace, so that would not have an adverse impact." (A.R. 41.) The VE also testified that his testimony was consistent with the Dictionary of Occupational Titles. (A.R. 40.)

Accordingly, the ALJ was entitled to rely on the VE's testimony. See Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005) ("A VE's recognized expertise provides the necessary foundation for his or her testimony."); Lair v. Colvin, No. 5:12-cv-00932—SP, 2013 WL 1247708, *4 (C.D. Cal. Mar. 23, 2013) ("Because the VE testified that there was no conflict between plaintiff's RFC and the DOT and because Plaintiff's counsel did not question the VE regarding any alleged inconsistencies between the DOT and plaintiff's RFC, the ALJ was entitled to rely upon the VE's testimony.").

**ORDER**

For the foregoing reasons, the decision of the Commissioner is affirmed.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: June 15, 2015.

_/s/_____
ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE